§ JS 44 (Rev. 12/07) (cand rev. 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

JAMES E. ALLEE, KORY PENTLAND and JIM BROWN on behalf of themselves and others similarly situated,

## DEFENDANTS

MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD.; TOSHIBA CORPORATION; TOSHIBA AMERICA, INC.; et al.

**(b)** County of Residence of First Listed Plaintiff **Wisconsin**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

MILBERG LLP
One California Plaza
300 S. Grand Ave., Suite 3900
Los Angeles, CA 90071-3172    (213) 617-1200

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [x] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury — Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | **LABOR** | [ ] 861 HIA (1395ff) | [ ] 810 Selective Service |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Mgmt. Relations | [ ] 863 DIWC/DIWW (405(g)) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise | | | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 790 Other Labor Litigation | **FEDERAL TAX SUITS** | [ ] 892 Economic Stabilization Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | **Habeas Corpus:** | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | | | [ ] 895 Freedom of Information Act |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 540 Mandamus & Other | **IMMIGRATION** | | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | |
| | [ ] 440 Other Civil Rights | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus – Alien Detainee | | [ ] 950 Constitutionality of State Statutes |
| | | | [ ] 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Section 16 of the Clayton Act, 15 U.S.C. Section 26; Section 1 of the Sherman Act, 15 U.S.C. Section 1

Brief description of cause:
Violation of Sec. 1 of the Sherman Act; Violation of State Antitrust Statutes; Unjust Enrichment & Disgorgement of Profits

## VII. REQUESTED IN COMPLAINT:

[x] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE". 07-5944-SC (MDL No. 1917) Samuel Conti

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2) (PLACE AND "X" IN ONE BOX ONLY)

[x] SAN FRANCISCO/OAKLAND    [ ] SAN JOSE

DATE
July 21, 2008

SIGNATURE OF ATTORNEY OF RECORD

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.    Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**          Example:          U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.
**Date and Attorney Signature.** Date and sign the civil cover sheet.

FILED

JUL 21 PM 3: 33

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

1  MILBERG LLP
   JEFF S. WESTERMAN (SBN 94559)
2  One California Plaza
   300 S. Grand Ave., Suite 3900
3  Los Angeles, CA 90071-3172
   Telephone: (213) 617-1200
4  Facsimile: (213) 617-1975
   Email: jwesterman@milberg.com
5

6  MILBERG LLP                                    ADEMI & O'REILLY, LLP
   PETER SAFIRSTEIN (*pro hac vice* admission    GURI ADEMI (*pro hac vice* admission to be
7  to be submitted)                               submitted)
   ANDREW MORGANTI (*pro hac vice*               SHPETIM ADEMI (*pro hac vice* admission to
8  admission to be submitted)                     be submitted)
   One Pennsylvania Plaza, 49th Floor             3620 Layton Avenue
9  New York, NY 10119                             Cudahay, WI 53100
   Telephone: (212) 594-5300                      Telephone: (414) 482-8000
10 Facsimile: (212) 868-1229                      Facsimile: (414) 482-8001
   Email: psafirstein@milberg.com                 Email: gademi@ademilaw.com
11     amorganti@milberg.com                          sademi@ademilaw.com

12
   Counsel for Plaintiffs and
13 the Proposed Indirect Purchaser Class

14                 UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16 JAMES E. ALLEE, KORY PENTLAND    )  Case 08                3493
   and JIM BROWN on behalf of themselves )                     EDL
17 and others similarly situated,    )
                                      )  CLASS ACTION COMPLAINT
18                     Plaintiffs,    )
             vs.                      )  JURY TRIAL DEMAND
19                                    )
   MATSUSHITA ELECTRIC INDUSTRIAL )
20 CO., LTD.; TOSHIBA CORPORATION;  )
   TOSHIBA    AMERICA,    INC.;   MT )
21 PICTURE    DISPLAY    CO.,   LTD.; )
   SAMSUNG    SDI   CO.,   LTD.;   LP )
22 DISPLAYS   INTERNATIONAL,   LTD.; )
   ROYAL PHILIPS ELECTRONICS N.V.; )
23 and  CHUNGHWA   PICTURE   TUBES, )
   LTD., and DOES 1-20, inclusive,   )
24                                    )
25                     Defendants.    )
                                      )
26

27

28
   ─────────────────────────────────────────────────────────
   CLASS ACTION COMPLAINT

   DOCS\440340v1

FAXED

## I.    INTRODUCTION

1.    Plaintiffs James E. Allee, Kory Pentland and Jim Brown bring this action for damages and injunctive relief under state and federal antitrust laws and common law claims on behalf of themselves individually and on behalf of all persons and entities who indirectly purchased products containing cathode ray tubes ("CRT Products" or "CRTs") in the United States from one or more named Defendants between May 1, 1998, and the present (the "Class Period"). Defendants are the leading manufacturers of televisions, computer monitors, and other electronic devices containing CRTs. Defendants control the majority of the CRT Product industry, a multibillion dollar market, which in 1999 alone generated over $19 billion dollars in gross revenue. During the Class Period, virtually every household in the United States owns, or has owned, at least one CRT Product.

2.    Since the mid-1990's, the CRT industry faced significant economic pressures as customer preferences for other emerging technologies shrank profits and threatened the sustainability of the industry. Plaintiffs are informed and believe, and thereon allege, that in order to maintain price stability, increase profitability, and extend the life of the CRT market, Defendants conspired, combined and contracted to fix, raise, maintain, and stabilize the price at which CRT Products were sold in the United States. Plaintiffs are further informed and believe, and thereon allege, that Defendants fraudulently concealed their anticompetitive conduct from Plaintiffs and the Class in furtherance of the conspiracy. As a result of Defendants' unlawful conduct, Plaintiffs and the other members of the Class paid artificially inflated prices for CRT Products during the Class Period. Such prices exceeded the amount they would have paid if the price for CRT Products had been determined by a competitive market.

## II.    JURISDICTION AND VENUE

3.    This action is instituted under Section 16 of the Clayton Act, 15 U.S.C. § 26, to obtain injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, to recover damages under state antitrust laws, and to recover costs of suit, including reasonable attorneys'

CLASS ACTION COMPLAINT

-1-

DOCS:440340v1

1   fees, for the injuries that Plaintiffs and all others similarly situated sustained as a result of

2   Defendants' violations of those laws.

3       4.      The Court has subject matter jurisdiction over the federal claim under 28 U.S.C.

4   §§ 1331 and 1337.  The Court has subject matter jurisdiction over the state law claims under 28

5   U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the

6   same case or controversy.

7       5.      This court also has subject matter jurisdiction over this class action pursuant to

8   the Class Action Fairness Act of 2005, which amended 28 U.S.C. § 1332 to add a new

9   subsection (d) conferring federal jurisdiction over class actions where, as here, any member of a

10  class of plaintiffs is a citizen of a state different from any defendant and the aggregated amount

11  in controversy exceeds $5,000,000, exclusive of interest and costs.   This Court also has

12  jurisdiction under 28 U.S.C. § 1332(d) because one or more members of the class is a citizen of a

13  state within the United States and one or more of the Defendants is a citizen or subject of a

14  foreign state.

15      6.      Venue is laid in this District pursuant to 28 U.S.C. § 1391.  Venue is proper in

16  this judicial district because during the Class Period one or more of the Defendants resided,

17  transacted business, was found, or had agents in this district, and, because a substantial part of

18  the events giving rise to Plaintiffs' claims occurred in this district, and a substantial portion of

19  the affected portion of the interstate trade and commerce described below has been carried out in

20  this district.

21                              **III.   DEFINITIONS**

22      7.      As used herein, the term "CRT Products" means cathode ray tubes and products

23  containing cathode ray tubes, including television sets and computer monitors.

24      8.      The "Class Period" or "relevant period" means the period beginning at least May

25  1, 1998, through the present.

26      9.      "Person" means any individual, partnership, corporation, association, or other

27  business or legal entity.

28

CLASS ACTION COMPLAINT                                                          -2-

DOCS\440340v1

10.    The "Indirect Purchaser States" are Arizona, California, District of Columbia, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.

## IV.    PARTIES

### A.    Plaintiffs

11.    Plaintiff James E. Allee ("Allee") is a resident of the City of Waukesha in the State of Wisconsin.    During the relevant period, Allee indirectly purchased CRT Products manufactured and/or distributed by one or more of the Defendants or their co-conspirators during the Class Period and has been injured by reason of the antitrust violations alleged in the Complaint.

12.    Plaintiff Kory Pentland ("Pentland") is a resident of the City of Grand Rapids in the State of Michigan. During the relevant period, Pentland indirectly purchased CRT Products manufactured and/or distributed by one or more of the Defendants or their co-conspirators during the Class Period and has been injured by reason of the antitrust violations alleged in the Complaint.

13.    Plaintiff Jim Brown ("Brown") is a resident of the City of Belleville in the State of Michigan.    During the relevant period, Brown indirectly purchased CRT Products manufactured and/or distributed by one or more of the Defendants or their co-conspirators during the Class Period and has been injured by reason of the antitrust violations alleged in the Complaint.

### B.    Defendants

14.    Defendant Matsushita Electric Industrial Co., Ltd. ("Matsushita") (n/k/a Panasonic Corporation of North America, based in Secaucus, New Jersey) is a business entity organized under the laws of Japan, with its principal place of business at 1006, Oaza Kadoma, Kadoma City, Osaka 571-8501, Japan.    During the Class Period, Matsushita's CRT Products were either manufactured, sold or distributed throughout the United States, including under the brand names Panasonic and JVC.

15.     Defendant Toshiba Corporation is a business entity organized under the laws of Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan.    During the Class Period, Toshiba Corporation's CRT Products were either manufactured, sold or distributed throughout the United States.

16.     Defendant Toshiba America, Inc. ("Toshiba America") is a wholly owned and controlled subsidiary of Defendant Toshiba Corporation.  Toshiba America is a business entity organized under the laws of New York, with its principal place of business at 1251 Avenue of the Americas, Suite 4110, New York, New York, 10020.  During the Class Period, Toshiba America's CRT Products were either manufactured, sold or distributed throughout the United States.

17.     Defendants Toshiba Corporation and America, Inc. are referred to collectively herein as "Toshiba."

18.     Upon information and belief, defendant MT Picture Display Co., Ltd. ("MT Picture Display") is a joint venture between Defendants Matsushita and Toshiba; is a business entity organized under the laws of Japan, with its principal place of business at 1-1, Saiwai-cho, Takatsuki City 569-1193, Osaka, Japan; and during the Class Period, MT Picture Display's CRT Products were either manufactured, sold or distributed throughout the United States.

19.     Defendant Samsung SDI Co. Ltd. ("Samsung SDI") is a business entity organized under the laws of South Korea, with its principal place of business at 575, Shin-Dong Yeongtong-Gu, Suwon-Si, Kyeongai-Do, 442-390, South Korea.  During the Class Period, Samsung SDI's CRT Products were either manufactured, sold or distributed throughout the United States.

20.     Defendant LP Displays International, Ltd. ("LP Displays") is a business entity organized under the laws of Hong Kong, with its principal place of business at 6th Floor, ING Tower, 308 Des Voeux Road Central, Sheung Wan, Hong Kong, China.  During the Class Period, LP Displays' CRT Products were either manufactured, sold or distributed throughout the United States.

CLASS ACTION COMPLAINT                                                    -4-

DOCS\440340v1

1    21.    Defendant Royal Philips Electronics N.V. ("Royal Philips") is a business entity

2  organized under the laws of the Netherlands, with its principal place of business at Breitner

3  Center, Amstelplein 2, 1096 BC Amsterdam, The Netherlands.  During the Class Period, Royal

4  Philips' CRT Products were either manufactured, sold or distributed throughout the United

5  States.

6    22.    Defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa") is a business entity

7  organized under the laws of Taiwan, with its principal place of business at No. 1127 Heping

8  Road, Padeh City, Taoyuan, Taiwan, 334 (R.O.C.).  During the Class Period, Chunghwa's CRT

9  Products were either manufactured, sold or distributed throughout the United States.

10    23.    The true names and capacities of defendants DOES 1-20 are unknown to

11  Plaintiffs.  Each of such fictitiously named defendants has participated or acted in concert or in

12  furtherance of the violations alleged herein and has performed acts and made statements in

13  furtherance thereof. When and if Plaintiffs learn the identity of such persons, Plaintiffs will

14  amend this Complaint to show such Defendant's true name and capacity.

15    **V.    DEFENDANTS AND CO-CONSPIRATORS**

16    24.    Various other persons, firms and corporations, not named as Defendants herein,

17  and presently unknown to Plaintiffs, have participated as co-conspirators with Defendants and

18  have performed acts and made statements in furtherance of the conspiracy and/or in furtherance

19  of the anticompetitive or unfair conduct.

20    25.    Whenever in this Complaint reference is made to any act, deed or transaction of

21  any corporation, the allegation means that the corporation engaged in the act, deed or transaction

22  by or through its officers, directors, agents, employees or representatives while they were

23  actively engaged in the management, direction, control or transaction of the corporation's

24  business or affairs.

25    26.    Each of the Defendants named herein acted as the agent or joint venturer of or for

26  the other Defendants with respect to the acts, violations, and common course of conduct alleged

27

28

CLASS ACTION COMPLAINT                                                     -5-

DOCS\440340v1

1 herein. Each Defendant, which is a subsidiary of a foreign parent, acts as the sole United States

2 agent for CRT Products made by its parent company.

3 ## VI.    INTERSTATE TRADE AND COMMERCE

4     27.    Throughout the Class Period, there was a continuous and uninterrupted flow of

5 CRT Product sales in interstate and international commerce throughout the United States.

6     28.    Defendants' unlawful activities, as described herein, took place within the flow of

7 interstate commerce to CRT Product purchasers located in states other than the states in which

8 Defendants are located, as well as throughout the world, and had a direct, substantial, and

9 reasonably foreseeable effect upon interstate and international commerce, including the United

10 States CRT Products market.

11 ## VII.    CLASS ACTION ALLEGATIONS

12     29.    Plaintiffs bring this action on behalf of themselves and as a class action pursuant

13 to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of all members of

14 the following class (the "Nationwide Class"):

15     All persons and or entities residing in the United States who or which indirectly
purchased CRT Products in the United States for their own use and not for resale,
16     at any time during the period from May 1, 1998 through the present. Specifically
excluded from this Class are Defendants; the officers, directors or employees of
17     any Defendant; any entity in which any Defendant has a controlling interest; and,
any affiliate legal representative, heir or assign of any Defendant. Also excluded
18     are any federal, state or local government entities, any judicial officer presiding
over this action and the members of his/her immediate family and judicial staff,
19     and any juror assigned to this action.

20     30.    Plaintiffs also bring this action on behalf of themselves and as a class action

21 pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure and/or respective

22 state statutes(s), on behalf of all members of the following State classes or subclasses

23 (collectively "Indirect Purchaser State Classes"): Arizona, California, District of Columbia,

24 Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, North

25 Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.

26     31.    This action has been brought and may properly be maintained as a class action

27 pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

28

CLASS ACTION COMPLAINT

-6-

1        (a)      The Classes are ascertainable and there is a well-defined community of

2  interest among members of the Classes;

3        (b)      Based upon the nature of trade and commerce involved and the number of

4  indirect purchasers of CRT Products, Plaintiffs believe that the number of Class members is very

5  large, and therefore joinder, of all Class members is not practicable;

6        (c)      Plaintiffs' claims are typical of Class members' claims because Plaintiffs

7  indirectly purchased CRT Products manufactured by Defendants or their co-conspirators, and

8  therefore Plaintiffs' claims arise from the same common course of conduct giving rise to the

9  claims of Class members and the relief sought is common to the Classes;

10       (d)      The following common questions of law or fact, among others, exist as to

11  the members of the Classes:

12            (i)      Whether Defendants formed and operated a combination or

13  conspiracy to fix, raise, maintain, or stabilize the prices of CRT Products;

14            (ii)     Whether the combination or conspiracy caused the price of CRT

15  Products to be higher than they would have been in the absence of Defendants' conduct;

16            (iii)    The operative time period of Defendants' combination or

17  conspiracy;

18            (iv)    Whether Defendants' conduct caused injury to the business or

19  property of Plaintiffs and the members of the Classes;

20            (v)     The appropriate measure of the amount of damages suffered by the

21  Classes;

22            (vi)    Whether Defendants' conduct violates Section 1 of the Sherman

23  Act (15 U.S.C. § 1) as alleged in the First Claim for Relief;

24            (vii)    Whether Defendants' conduct violates the Indirect Purchaser

25  States' antitrust laws as alleged in the Second Claim for Relief; and

26            (viii)   The appropriate nature of class-wide equitable relief.

27

28

CLASS ACTION COMPLAINT                                                    -7-

1          (e)     These and other questions of law and fact common to the members of the
2   Classes predominate over any questions affecting only individual members, including legal and
3   factual issues relating to liability and damages;

4          (f)     After determination of the predominant common issues identified above, if
5   necessary or appropriate, the Classes can be divided into logical and manageable subclasses;

6          (g)     Plaintiffs will fairly and adequately protect the interests of the Classes in
7   that Plaintiffs have no interests that are antagonistic to other members of the Classes and have
8   retained counsel competent and experienced in the prosecution of class actions and antitrust
9   litigation to represent them and the Classes;

10          (h)     A class action is superior to other available methods for the fair and
11   efficient adjudication of this litigation since individual joinder of all damages for Class members
12   is impractical. The damages suffered by the individual Class members are relatively small, given
13   the expense and burden of individual prosecution of the claims asserted in this litigation. Thus,
14   absent the availability of class action procedures it would not be feasible for Class members to
15   redress the wrongs done to them.   Further, individual litigation presents the potential for
16   inconsistent or contradictory judgments and would greatly magnify the delay and expense to all
17   parties and the court system.   Therefore, the class action device presents far fewer case
18   management difficulties and will provide the benefits of unitary adjudication, economy of scale
19   and comprehensive supervision in a single court;

20          (i)     Defendants have acted, and/or refused to act, on grounds generally
21   applicable to the Classes, thereby making appropriate final injunctive relief with respect to the
22   Classes as a whole; and

23          (j)     In the absence of a class action, Defendants would be unjustly enriched
24   because they would be able to retain the benefits and fruits of their wrongful conduct.

25

26

27

28
CLASS ACTION COMPLAINT                                                                      -8-

DOCS\440340v1

# VIII.   FACTUAL ALLEGATIONS

## A.    The Relevant Product Market

32.    CRT technology has been in use for more than 100 years. The basic cathode ray tube consists of three elements: the envelope, the electron gun, and the phosphor screen.



**Cross-sectional representation of a cathode ray tube**

Source: http://www.diycalculator.com/sp-console.shtml

33.    CRTs are manufactured in several standard sizes including 17 inch, 19 inch, 27 inch and 32 inch.  CRTs manufactured by Defendants are interchangeable with one another.

34.    The worldwide market for CRT Products is and has been large.  In 1997, the worldwide CRTs market exceeded $24 billion in sales.

35.    At the beginning of the Class Period, CRTs were the dominant display technology worldwide.  For example, in 1997, 99.3% of all computer monitors sold worldwide contained CRTs.    In 2005, approximately 47 million CRT monitors were sold worldwide, and approximately 20.3% of these were sold in the United States.

36.    Although the value of all display materials shipped worldwide is projected to rise at an average annual growth rate of 12.8% by 2010, worldwide demand for CRT Products is

CLASS ACTION COMPLAINT                                                    -9-

DOCS\440340v1

1 | declining overall because of the growing popularity of newer technologies (*e.g.*, FPD products)
2 | which are being used in place of CRT Products.

3 |     37.    FPD Products may be used to produce the same image as CRT Products, but also
4 | have many important advantages over CRT Products. For example, FPD products are less bulky,
5 | lighter, require less energy, are easier to read, and do not flicker.

6 | **B.    Oligopolistic Nature of the CRT Industry**

7 |     38.    During the Class Period, the CRT industry has been dominated by relatively few
8 | companies. In 2002 for example, three companies — defendants LP Displays (formerly known
9 | as LG.Philips Displays), Samsung, and Chunghwa — controlled approximately 62% of the CRT
10 | market. In addition to these three companies, other named Defendants formed a substantial
11 | portion of the remaining CRT market.

| Company | Share |
|---------|-------|
| LG.Philips Displays | 27% |
| Samsung SDI | 24% |
| Chunghwa Picture Tubes | 11% |
| Japanese Producers[1] | 15% |
| Other | 23% |

Source: The Electronic Times, compiled by DigiTimes, June 2002

17 |     39.    The CRT industry also had significant consolidation during the Class Period,
18 | including but not limited to: (a) the creation of LG.Philips Displays in 2001, which was a joint
19 | venture between Philips and LG Electronics' CRT businesses; (b) the 2002 merger of Toshiba
20 | and Matsushita into Matsushita-Toshiba; and (c) Orion's agreement to manufacture CRT
21 | Products for Toshiba, which effectively took Toshiba's capacity out of the market.

22 |     40.    This concentration of market share facilitated Defendants' ability to implement
23 | the conspiracy. Involvement in long-standing joint ventures, both in the CRT market and closely
24 | related markets, also gave these supposed competitors continuous opportunities to discuss
25 | pricing, capacity utilization, and other important prospective market information. The mutually

27 | [1]    "Japanese Producers" includes defendants Hitachi and Toshiba.

CLASS ACTION COMPLAINT

-10-

1  beneficial nature of the business relations between certain Defendants not only provided the
2  opportunity to conspire, it also created a financial incentive to do so.

3      41.     The CRT product industry is characterized by a number of structural features that
4  facilitate collusion, including market concentration, the consolidation of manufacturers, multiple
5  interrelated business relationships, significant barriers to entry and interchangeability of
6  products.

7      42.     Defendant Samsung SDI has the largest market share of any CRT Products
8  manufacturer. In 2000, Defendant Samsung SDI had 18% of the global CRTs market. In 2002,
9  Samsung SDI had 21.8% of the global market for CRT monitors. In 2004, Samsung SDI had a
10  30% share of the global CRTs market.

11     43.     Defendant LP Displays (formerly LG.Philips Displays) has the second largest
12  share of the CRT market. In 2004, LG.Philips Displays held 27% of the global market for CRT.

13     44.     Defendant MT Picture Display (formerly Matsushita Toshiba Display Co.) is also
14  a major player in the CRT market. In 2004, Matsushita Toshiba Picture Display Co. held 9% of
15  the global market for CRTs.

16     45.     Defendant Chunghwa Picture Tubes held 21.7% of the global CRT market in
17  1999.

18     46.     In 2004, Defendants Samsung SDI, LP Displays, MT Picture Display, and
19  Chunghwa Picture Tubes maintained a collective 78% of the global CRT market.

20     47.     The CRT Products market has also been subject to substantial consolidation and
21  multiple interrelated business relationships during the Class Period. Matsushita Electric
22  Industrial Co. Ltd. and Toshiba Corporation combined to form Defendant MT Picture Display
23  Company. Before the combination of MT Picture Display Company, Matsushita and Toshiba
24  had been the fourth and sixth largest CRT manufacturers in the world. This joint venture
25  combined the entire CRT operations of both parent companies. MT Picture Display
26  Company specialized in the manufacture of CRTs above 30 inches, supplying some
27  950,000 units annually to the North American market.

28

CLASS ACTION COMPLAINT                                              -11-

1    48.    In 2005, Samsung SDI and LG Philips Displays entered into an agreement to
2  share parts with respect to CRTs in an effort to boost their combined market share.

3    49.    Defendants sell their CRT Products through various channels, including to
4  manufacturers of electronic products and devices, and to resellers of CRT Products.  These
5  electronic products and devices and CRT Products are then sold, directly or indirectly, to
6  consumers and are not altered during the course of sale.

7         **IX.    DEFENDANTS' ALLEGED ANTICOMPETITIVE CONDUCT**

8    50.    During the Class Period, Plaintiffs are informed and believe, while demand for
9  CRT Products fell in the United States, Defendants' conspiracy was effective in moderating the
10  normal downward pressures on prices for CRT Products caused by the entry of the new
11  generation of competing technologies.

12    51.    During the Class Period, there were not only periods of unnatural and sustained
13  price stability, but there were also inexplicable increases in the prices of CRTs, despite
14  declining demand due to approaching obsolescence of CRTs caused by the emergence of a new,
15  superior, substitutable technology.

16    52.    These periods of price stability and price increases for CRTs are fundamentally
17  inconsistent with a competitive market for a product where demand is rapidly decreasing
18  because of the introduction of new superior technologies.

19    53.    The aforesaid contract, combination or conspiracy consisted of a continuing
20  combination, agreement, understanding, and concert of action among the Defendants and co-
21  conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the price of
22  CRT Products.

23    54.    Defendants have a collective interest to fix, maintain, or otherwise stabilize the
24  prices of CRT Products in order to maximize their profit by depriving free and open competition
25  in the CRT Products industry.

26    55.    Upon information and belief, Defendants and their co-conspirators have engaged
27  in a contract, combination, trust or conspiracy, the effect of which was to raise the prices at

28

1   which they sold CRT Products to artificially inflated levels from at least May 1, 1998, through

2   the present.

3                    **X.    GLOBAL ANTITRUST REGULATORS**
                    **PROBE THE CRT PRODUCT INDUSTRY**
4

5       56.    Since late 2007, antitrust enforcement authorities in multiple countries have

    begun investigating the CRT industry for possible antitrust violations.
6

7       57.    On November 8, 2007, the European Commission stated in a press release:

8           The European Commission can confirm that on 8th November
        2007 Commission officials carried out unannounced inspections at the
        premises of manufacturers of cathode ray tubes (CRTs).  Cathode ray
9       tubes are used in television sets and computer monitors.  The Commission
        has reason to believe that the companies concerned may have violated EC
10      Treaty rules on cartels and restrictive business practices (Article 81).

11          The Commission officials were accompanied by their counterparts
        from the relevant national competition authorities.

12
            Surprise inspections are a preliminary step in investigations into
13      suspected cartels.

14      58.    Also on November 9, 2007, the Associated Press news agency reported the

15  following:

16          Japan's antitrust officials searched a subsidiary of Matsushita
        Electric Industrial Co. on suspicion of forming an international cartel to
17      fix prices for cathode-ray tubes for television, an official and media
        reports said Friday.

18          MT Picture Display Co., a 100 percent subsidiary of Matsushita, is
        suspected of fixing prices for CRTs with other manufacturers in South
19      Korea, Taiwan and Hong Kong, Japanese business daily Nikkei reported
        Friday.
20
            Antitrust officials in Japan, South Korea, the United States and the
21      European Union have begun investigations, the paper said....

22                            * * *

            Japan's Fair Trade Commission conducted an on-sight inspection
23      of MT Picture Display Thursday, said Akira Kadota, a spokesman for
        Matsushita, the Osaka-based maker of Panasonic-brand products.
24
                            * * *
25          Nikkei said the companies including South Korea's Samsung SDI
        are suspected of forming a cartel around 2005 to keep the price of CRTs
26      from falling, citing unnamed officials.

27

28
    | CLASS ACTION COMPLAINT | -13- |

1    59.    On November 8, 2007, the Bloomberg news agency further reported the

2  following:

3            Japanese and European Union antitrust authorities carried out raids
            at companies in the cathode-ray tube industry as part of a price-fixing
4            investigation.... Japan's Fair Trade Commission also began a probe of a
            joint venture between Matsushita Electric Industrial Co. and Toshiba
5            Corp., Munestsugu Takeda, a spokesman for Matsushita, said by
            telephone.

6                                        * * *

7            Cathode-ray tubes are used in television sets and computer
            monitors. Matsushita and Toshiba merged their cathode-ray tube units to
8            form Matsushita Toshiba Picture Display Co. in 2003. The companies
            said at the time that the joint venture was the world's third-largest maker
9            of television tubes.

10

11    60.    On November 9, 2007, the Agence France-Presse ("AFP") news agency reported

12  the following:
            South Korea's anti-trust watchdog has launched a probe into
13            Samsung SDI as part of an international investigation into alleged price-
            fixing, officials said Friday.

14            The Fair Trade Commission is investigating allegations that
15            Samsung SDI colluded with foreign rivals to fix the prices of cathode ray
            tubes (CRTs) for television.

16            'It is part of an international probe into alleged price-fixing this
17            week. We are cooperating with the Fair Trade Commission,' a Samsung
            SDI spokesman told AFP.

18

19    61.    On November 12, 2007, Defendant Chunghwa announced, via a filing with the

20  Taiwan Stock Exchange, that it received a summons from the United States Department of

21  Justice relating to a CRT antitrust price-fixing investigation.

22    62.    On November 16, 2007, *BNA's Antitrust & Trade Regulation* reported that "Since

23  2005, [Japan Fair Trade Commission] sources alleged, MT Picture Display held 'tea parties'

24  with Samsung and other manufacturers and exchanged information on picture tube prices in Asia

25  and Europe."

26    63.    On November 21, 2007, Philips issued a press release and stated the following:

27            Competition law authorities in several jurisdictions have commenced
            investigations into possible anticompetitive activities in the Cathode-Ray Tubes,
28            or CRT, industry. Royal Philips Electronics (NYSE:PHG, AEX: PHI) today

CLASS ACTION COMPLAINT                                                    -14-

DOCS\440340v1

1   announced that, as one of the companies that was active in the CRT business, it is subject to one or more of these ongoing investigations.

2   64.    Defendants, through their officers, directors and employees, effectuated the
3   aforesaid contract, combination, trust or conspiracy between themselves and their co-
4   conspirators by, among other things:

5       (a)    participating in meetings and conversations, including through various
6   trade associations and committees, to discuss the prices of products containing CRTs in the
7   United States;

8       (b)    agreeing, during those meetings and conversations, to charge prices at
9   specified levels and otherwise to increase and maintain prices of products containing CRTs sold
10  in the United States;

11      (c)    issuing price announcements and quotations in accordance with the
12  agreements reached; and

13      (d)    selling products containing CRTs to various customers in the United
14  States at non-competitive prices.

15  65.    The aforesaid combination and conspiracy has had the following effects, among
16  others:

17      (a)    price competition in the CRT industry has been suppressed, restrained and
18  eliminated;

19      (b)    the prices of CRT Products have been raised, fixed, maintained and
20  stabilized at artificial and non-competitive levels; and

21      (c)    consumers of CRT Products were deprived of free and open competition
22  in the CRT market.

23  ## XI.    INJURY TO PLAINTIFFS AND MEMBERS OF THE CLASS

24  66.    During the period, covered inflated prices for CRT Products were passed-on to
25  Plaintiffs and the other members of the Class.  By reason of the alleged violations of the antitrust
26  laws, Plaintiffs and the other members of the Class paid higher prices for CRT Products than
27  they would have paid in the absence of the illegal contract, combination or conspiracy, and, as a

28

CLASS ACTION COMPLAINT                                                      -15-

DOCS\440340v1

1 | result, have been injured in their business and have suffered damages in an amount presently
2 | undetermined.

3 | 67.    The specific amounts of damages have not yet been determined because such
4 | determination will require discovery.

5 | **A.    Effects of Defendants' Antitrust Violations**

6 | 68.    The above combination and conspiracy has had the following effects, among
7 | others:

8 | (a)    Price competition in the sale of CRT Products by Defendants and their co-
9 | conspirators has been restrained, suppressed and eliminated throughout the United States;

10 | (b)    Prices for CRT Products sold by Defendants has been raised, fixed,
11 | maintained and stabilized at artificially high and noncompetitive levels throughout the United
12 | States; and

13 | (c)    Indirect purchasers of CRT Products from Defendants have been deprived
14 | of the benefit of free and open competition in the purchase of CRT Products.

15 | 69.    As a direct and proximate result of the unlawful conduct of Defendants, Plaintiffs
16 | and other members of the class(es) have been injured in their business and property in that they
17 | paid more for CRT Products than they otherwise would have paid in the absence of the unlawful
18 | conduct of Defendants.

19 | **XII.    VIOLATIONS ALLEGED**

20 | **First Claim of Relief**

21 | **(Violation of Section 1 of the Sherman Act)**

22 | 70.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every
23 | allegation set forth in the preceding paragraphs of this Complaint.

24 | 71.    Beginning at a time unknown to Plaintiffs, but at least as early as May 1, 1998,
25 | through the present, the exact dates being unknown to Plaintiffs and exclusively within the
26 | knowledge of Defendants, Defendants and their co-conspirators, entered into a continuing

27 |
28 |

1  agreement, understanding, and conspiracy to unreasonably restrain trade and commerce in the

2  United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

3      72.     In particular, Defendants have combined and conspired to fix, raise, maintain or

4  stabilize the prices of CRT Products sold in the United States.

5      73.     Defendants, by their unlawful conspiracy, artificially raised, inflated, and

6  maintained the market prices of CRT Products as herein alleged.

7      74.     The contract, combination or conspiracy consisted of a continuing agreement,

8  understanding and concert of action among Defendants and their co-conspirators, the substantial

9  terms of which were to fix, raise, maintain and stabilize the prices of CRT Products they sold in

10  the United States and elsewhere.

11     75.     In formulating and carrying out the alleged agreement, understanding, and

12  conspiracy, Defendants and their co-conspirators did those things that they combined and

13  conspired to do, including, but not limited to the acts, practices, and course of conduct set forth

14  above, and the following, among others:

15         (a)     Participated in meetings and conversations to discuss the prices of CRT

16  Products;

17         (b)     Agreed to manipulate prices and the supply of CRT Products in a manner

18  that deprived purchasers of CRT Products of free and open competition;

19         (c)     Issued price announcements and price quotations in accordance with the

20  agreements reached; and

21         (d)     Sold CRT Products to customers in the United States at non-competitive

22  prices.

23     76.     The combination and conspiracy alleged herein has had the following effects,

24  among others:

25         (a)     Price competition in the sale of CRT Products has been restrained,

26  suppressed and/or eliminated in the United States;

27

28

CLASS ACTION COMPLAINT                                                          -17-

1        (b)     Prices for CRT Products sold by Defendants and their co-conspirators

2  have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels

3  throughout the United States; and

4        (c)     Those who purchased CRT Products directly or indirectly from

5  Defendants have been deprived the benefits of free and open competition.

6        77.    As a direct result of the unlawful conduct of Defendants and their co-conspirators

7  in furtherance of their continuing contract, combination or conspiracy, Plaintiffs and the

8  members of the Nationwide Class have been injured and will continue to be injured in their

9  business and property by paying more for CRT Products purchased indirectly from the

10  Defendants and their co-conspirators than they would have paid and will pay in the absence of

11  the combination and conspiracy.

12        78.    These violations are continuing and will continue unless enjoined by this Court.

13        79.    Pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Plaintiffs and the

14  Nationwide Class seek the issuance of an injunction against Defendants, preventing and

15  restraining the violations alleged herein.

16                      **Second Claim of Relief**

17               **(Violation of State Antitrust Statutes)**

18        80.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

19  allegation set forth in the preceding paragraphs of this Complaint.

20        81.    Defendants' intentional and purposeful anticompetitive acts that are described

21  above, including but not limited to acts of collusion to set prices and the actual act of price fixing

22  itself, were intended to and did in fact cause Plaintiffs and the members of the Indirect Purchaser

23  State Classes to pay supracompetitive prices for CRT Products purchased in the Indirect

24  Purchaser States.

25        82.    Defendants' contract, combination, and conspiracy as described above is in

26  violation of the following state antitrust statutes.

27

28

CLASS ACTION COMPLAINT                    -18-

1       83.    By reason of the foregoing, Defendants have entered into agreements in restraint

2  of trade in violation of Arizona Revised Stat. §§ 44-1401 et seq.

3       84.    By reason of the foregoing, Defendants have entered into agreements in restraint

4  of trade in violation of California Business & Professions Code § 16720 et seq.

5       85.    By reason of the foregoing, Defendants have entered into agreements in restraint

6  of trade in violation of District of Columbia Code Ann. §§ 280-4503 et seq.

7       86.    By reason of the foregoing, Defendants have entered into agreements in restraint

8  of trade in violation of Iowa Code §§ 553.1 et seq.

9       87.    By reason of the foregoing, Defendants have entered into agreements in restraint

10  of trade in violation of Kansas Stat. Ann. §§ 50-101 et seq.

11       88.    By reason of the foregoing, Defendants have entered into agreements in restraint

12  of trade in violation of Maine Rev. Stat. Ann. 10 §§ 1101 et seq.

13       89.    By reason of the foregoing, Defendants have entered into agreements in restraint

14  of trade in violation of Michigan Comp. Laws Ann. §§ 445.773 et seq.

15       90.    By reason of the foregoing, Defendants have entered into agreements in restraint

16  of trade in violation of Minnesota Stat. §§ 325D.52 et seq.

17       91.    By reason of the foregoing, Defendants have entered into agreements in restraint

18  of trade in violation of Mississippi Code Ann. § 75-21-1 et seq.

19       92.    By reason of the foregoing, Defendants have entered into agreements in restraint

20  of trade in violation of Nebraska Rev. Stat. § 59-901 et seq.

21       93.    By reason of the foregoing, Defendants have entered into agreements in restraint

22  of trade in violation of Nevada Rev. Stat. Ann. §§ 598A et seq.

23       94.    By reason of the foregoing, Defendants have entered into agreements in restraint

24  of trade in violation of New Mexico Stat. Ann. §§ 57-1-1 et seq.

25       95.    By reason of the foregoing, Defendants have entered into agreements in restraint

26  of trade in violation of North Carolina Gen. Stat. §§ 75-1 et seq.

27

28

CLASS ACTION COMPLAINT                         -19-

1    96.    By reason of the foregoing, Defendants have entered into agreements in restraint
2    of trade in violation of North Dakota Cent. Code §§ 51-08.1-01 et seq.

3    97.    By reason of the foregoing, Defendants have entered into agreements in restraint
4    of trade in violation of South Dakota Codified Laws Ann. §§ 37-1 et seq.

5    98.    By reason of the foregoing, Defendants have entered into agreements in restraint
6    of trade in violation of Tennessee Code Ann. §§ 47-25-101 et seq.

7    99.    By reason of the foregoing, Defendants have entered into agreements in restraint
8    of trade in violation of Vermont Stat. Ann. 9 §§ 2453 et seq.

9    100.    By reason of the foregoing, Defendants have entered into agreements in restraint
10   of trade in violation of West Virginia Code §§ 47-18-1 et seq.

11   101.    By reason of the foregoing, Defendants have entered into agreements in restraint
12   of trade in violation of Wisconsin Stat. §§ 133.01 et seq.

13   102.    Class members in each of the states listed above paid supracompetitive,
14   artificially inflated prices for CRT Products.  As a direct and proximate result of Defendants'
15   unlawful conduct, Plaintiffs and members of the Indirect Purchaser State Classes have been
16   injured in their business and property in that they paid more for CRT Products than they
17   otherwise would have paid in the absence of Defendants' unlawful conduct.

18   103.    As a result of Defendants' and their co-conspirators' violation of the above
19   Indirect Purchaser States' antitrust laws, Plaintiffs seek damages, to be trebled where permitted
20   by a particular state's antitrust law, and costs of suit, including reasonable attorneys' fees, to the
21   extent permitted by the above Indirect Purchaser States' antitrust laws.

22                                  **Third Claim of Relief**

23                    **(Unjust Enrichment and Disgorgement of Profits)**

24   104.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every
25   allegation set forth in the preceding paragraphs of this Complaint.

26   105.    Defendants have been unjustly enriched through overpayments by Plaintiffs and
27   the Class members and the resulting profits.

28

CLASS ACTION COMPLAINT                                                    -20-

DOCS\440340v1

106. Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred via overpayments by Plaintiffs and the members of the Classes.

107. Plaintiffs seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and the Class members may seek restitution.

### XIII. FRAUDULENT CONCEALMENT

108. Throughout the relevant period, Defendants affirmatively and fraudulently concealed their unlawful conduct against Plaintiffs and the Class.

109. Plaintiffs and the members of the Class did not discover, and could not discover through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as alleged herein until shortly before this litigation was commenced. Nor could Plaintiffs and the Class members have discovered the violations earlier than that time because Defendants conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in furtherance thereof, and fraudulently concealed their activities through various other means and methods designed to avoid detection. The conspiracy was by its nature self-concealing.

110. Defendants engaged in a successful, illegal price-fixing conspiracy with respect to CRT Products, which they affirmatively concealed, in at least the following respects:

(a) By agreeing among themselves not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their illegal scheme; and

(b) By giving false and pretextual reasons for their CRT Product price increases during the relevant period and by describing such pricing falsely as being the result of external costs rather than collusion.

111. As a result of Defendants' fraudulent concealment of their conspiracy, Plaintiffs and the Class assert the tolling of any applicable statute of limitations affecting the rights of action of Plaintiffs and the members of the Classes.

CLASS ACTION COMPLAINT

-21-

DOCS\440340v1

## XIV.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray as follows:

A.     That the Court determine that the claims alleged herein under the Sherman Act, state antitrust laws and/or unfair competition laws and common law, may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     That the Court adjudge and decree that the unlawful conduct, contract, combination, and conspiracy alleged herein constitutes:

(a)     A violation of the Sherman Act, 15 U.S.C. § 1, as alleged in the First Claim for Relief;

(b)     A violation of the Indirect Purchaser States' antitrust laws as alleged in the Second Claim for Relief; and

(c)     Acts of unjust enrichment as set forth in the Third Claim for Relief herein.

C.     That Plaintiffs and the Indirect Purchaser State Classes recover damages, as provided by the Indirect Purchaser States' antitrust and unfair competition laws, and that a joint and several judgment in favor of Plaintiffs and the Classes be entered against Defendants in an amount to be trebled in accordance with such laws;

D.     That Defendants, their co-conspirators, successors, transferees, assigns, parents, subsidiaries, affiliates, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on behalf of Defendants, or in concert with them, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the combinations, conspiracy, agreement, understanding or concert of action, or adopting or following any practice, plan, program or design having a similar purpose or effect in restraining competition;

E.     That Plaintiffs and the Classes be awarded restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and acts of unjust enrichment;

CLASS ACTION COMPLAINT

-22-

DOCS\440340v1

1    F.    That the Court award Plaintiffs and the Classes they represent pre-judgment and

2    post-judgment interest as permitted by law;

3    G.    That Plaintiffs and the members of the Classes recover their costs of suit,

4    including reasonable attorneys' fees as provided by law; and

5    H.    That the Court award Plaintiffs and the Classes they represent such other and

6    further relief as may be necessary and appropriate.

7                              **XV.   JURY TRIAL DEMANDED**

8    Plaintiffs demand a trial by jury of all of the claims asserted in this Complaint so triable.

9    DATED: July 21, 2008                         MILBERG LLP
                                                   JEFF S. WESTERMAN
10

11

12
                                                         Jeff S. Westerman
13
                                                   One California Plaza
14                                                 300 South Grand Avenue, Suite 3900
                                                   Los Angeles, CA 90071
15                                                 Telephone: (213) 617-1200
                                                   Facsimile: (213) 617-1975
16                                                 Email: jwesterman@milberg.com

17                                                 MILBERG LLP
                                                   PETER SAFIRSTEIN (*pro hac vice* admission to
18                                                 be submitted)
                                                   ANDREW MORGANTI (*pro hac vice* admission
19                                                 to be submitted)
                                                   One Pennsylvania Plaza
20                                                 New York, NY 10119
                                                   Telephone: (212) 594-5300
21                                                 Facsimile: (212) 868-1229
                                                   Email: psafirstein@milberg.com
22                                                        amorganti@milberg.com

23

24

25

26

27

28
     CLASS ACTION COMPLAINT
                                                                                    -23-
     DOCS:440340v1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ADEMI & O'REILLY, LLP
Guri Ademi (*pro hac vice* admission to be submitted)
Shpetim Ademi (*pro hac vice* admission to be submitted)
3620 Layton Avenue
Cudahay, WI 53100
Telephone: (414) 482-8000
Facsimile: (414) 482-8001
Email: gademi@ademilaw.com
       sademi@ademilaw.com

*Counsel for Plaintiffs and the Proposed Indirect Purchaser Class*